UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE NATIONAL INSURANCE
COMPANY and STAR INSURANCE
COMPANY,

    Plaintiffs/Counter-Defendants,

vs.                                               Case No. 8:10-cv-894-T-27TBM

KEVIN WHITE,

    Defendant, Counter-Plaintiff,
    Third Party Plaintiff, and
    Third Party Counter-Defendant,

vs.

HILLSBOROUGH COUNTY, FLORIDA,

    Third Party Defendant and
    Third Party Counter-Plaintiff.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiffs' Motion for Summary Judgment (Dkt. 45) and Kevin White's Motion for Summary Judgment (Dkt. 40). The parties and the intervenor have filed responses to the motions (*see, e.g.*, dkts. 49, 50, 51, and 53). Upon consideration, Plaintiffs' Motion for Summary Judgment (Dkt. 45) is **DENIED** in part and Kevin White's Motion for Summary Judgment (Dkt. 40) is **GRANTED** in part. The Court defers ruling on the motions for summary judgment as to Count II of the Complaint and Kevin White's counterclaim pending receipt of supplemental memoranda to be submitted by the parties.[1]

---

[1] This Order addresses the motions for summary judgment as to the claims between Kevin White and the Plaintiffs. The Court will address Kevin White's motion for summary judgment as to Hillsborough County in a separate order.

## Introduction

The issue in this litigation is whether State National Insurance Company ("State National"), Star Insurance Company ("Star Insurance") (collectively, the "Insurers"), and/or Hillsborough County, Florida (the "County") had a duty to defend Kevin White ("White") or reimburse him for the reasonable expenses he incurred in defending certain underlying litigation. As discussed below, White's motion for summary judgment is due to be granted in part because the undisputed facts demonstrate that the Insurers had an obligation to reimburse White his defense costs once the Self-Insured Retention amount in the applicable policy or policies was satisfied. Because the parties' have failed to adequately address certain issues relating to whether the Self-Insured Retention amount was satisfied, the parties' are directed to submit supplemental memoranda addressing these issues.

## Factual Background

State National issued a "Public Entities Excess" insurance policy, Policy No. MDB 267627, to Hillsborough County, and certain of its employees and public officials, effective from October 1, 2006, through October 1, 2007 (the "State Policy"). Star Insurance issued a "Public Entities Excess" insurance policy, Policy No. CP 0267743, to Hillsborough County, and certain of its employees and public officials, effective from October 1, 2007, through October 1, 2008 (the "Star Policy") (collectively, the "Policies").[2] White, was at all relevant times, a member of the Board of Commissioners for the County. There is no dispute that White, as a public official employed by the County, was an "Insured" as defined by the Policies.

---

[2] The Insurers reference both policies "because the conduct of the Defendant White as to which there is *allegedly* coverage, extends, temporally, over both policy terms, such that it is not necessarily clear which particular policy is 'triggered' ... ." Dkt. 45, p. 2 n. 1. While the Insurers allege that the Star Policy was a renewal of the State Policy, the relationship, if any, between State National and Star Insurance is not clear from the record.

The Policies contain two endorsements of particular relevance to the pending dispute.[3] First, the Policies each contain a Public Officials and Employees Liability Insurance Endorsement (Form SNS 1016) (the "POELI Endorsement") which modified the General Liability Coverage of the Policies as follows:

**Coverage D. Public Officials and Employees Liability Insurance**

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of a "wrongful act" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ...

   b. This applies to:

      (1) A "Wrongful Act" which is defined as any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by you, as a public official or as an employee of yours.

            *****

2. Exclusions.

   This insurance does not apply to any claim:

            *****

      E. arising out of bodily injury, sickness, disease, death, or mental anguish;

            *****

      J. arising from the willful violation of any statute, ordinance or regulation committed by or with your knowledge and consent;

            *****

      P. arising out of any awards of back salary; ...

---

[3] The parties agree that the language of both Policies is identical in all relevant respects.

Second, both Policies contain a Self-Insured Retention Endorsement (Form SNS 1010) (the "SIR Endorsement") which modified the insurance coverage under the Policies, providing that coverage was limited to amounts in excess of a self-insured retention of $350,000 per occurrence (the "SIR Retention"). In other words, the coverage applied only after the named insured (Hillsborough County) incurred expenses of $350,000 investigating, defending, negotiating and settling any claim for damages asserted against an insured. The SIR Endorsement also provided:

> 2.  In the event that any combined insured damages and insured allocated costs and expenses, as aforementioned, exceed, per occurrence, the [SIR Retention] and involve the liability of the company, then, solely as respects each such occurrence, the company will pay ... its otherwise applicable limit of liability ... .
>
> \*\*\*\*\*
>
> 4.  In the event of any occurrence which, in the opinion of any INSURED, is likely to give rise to liability under this Policy, no costs or expenses, other than for immediate first aid to others, shall be incurred by any INSURED, except at his or her own cost, peril and expense, without the written consent of the company. The NAMED INSURED shall be obligated to
>
>     A.  provide an adequate defense and investigation of any action for or notice of any actual, potential or alleged damages, and
>
>     B.  accept any reasonable offer or settlement within the NAMED INSURED'S self-insured retention,
>
>     and, in the event of any NAMED INSURED'S failure to comply with any part of this paragraph, the company shall not be liable for any damages or costs or expenses resulting from such occurrence.

## *The Underlying Litigation*

In May, 2008, Alyssa L. Ogden ("Ogden"), a former aid of White, filed suit against White and the County in state court asserting claims for (a) sex discrimination in violation of 42 U.S.C. § 1983 and § 1988, (b) sexual harassment in violation of the Florida Civil Rights Act of 1992, Fla. Stat.§§ 760.01-760.11 ("FCRA"), and (c) retaliatory discharge in violation of the FCRA. *See, e.g.*, Second Amended Complaint (Dkt. 37-2) ("Ogden Complaint"). The defendants removed the action to federal court. *See Ogden v. Hillsborough County, Florida, and White*, No. 8:08-cv-1187-RAL-TBM (M.D. Fla.) (hereinafter referred to as the "Ogden Litigation"). White was required to pay for his own defense in the Ogden Litigation.

On August 24, 2009, a jury returned a verdict in favor of Ogden on her claim of sexual harassment against White, finding that Ogden had been terminated as part of the sexual harassment or because she rejected unwelcome sexual advances. Ogden Verdict (Dkt. 48-4), ¶¶ 1, 2. Ogden was awarded damages totaling $75,000, representing past and future medical expenses of $15,000 and emotional pain and mental anguish of $60,000. The jury rejected Ogden's request for past lost wages and benefits. Ogden Verdict, ¶ 3. Final judgment was entered based on the verdict. *See* Judgment in Civil Action (Dkt. 48-11) (the "Ogden Judgment") ("The court has ordered that: The Plaintiff <u>Alyssa L. Ogden</u> recover from the defendant(s) <u>Hillsborough County, Florida and Kevin White</u> the amount of <u>Seventy Five Thousand</u> dollars ($75,000.00).").

Following entry of the Ogden Judgment, Ogden filed a Motion to Tax Attorneys' Fees and Costs seeking in excess of $200,000 (Dkt. 136). On or about September 22, 2009, and before the District Court ruled on Ogden's motion for fees and costs, the County agreed to pay $278,000 to settle the Ogden Litigation. *See* Full and Complete Waiver and Release of Liability (Dkt. 41-1) (the

"Ogden Settlement"), p.1.[4] In light of the Ogden Settlement, the District Court entered an order (1) denying as moot Ogden's Motion to Tax Attorneys' Fees and Costs and (2) providing that "[t]he judgement previously entered against Defendant White shall remain in full force and effect." Ogden Litigation, Dkt. 156.

On October 19, 2009, Ogden filed a Satisfaction of Judgment in accordance with the Ogden Settlement, acknowledging "that all sums due under it by Hillsborough County, Florida have been paid and that the final judgment is hereby satisfied, is cancelled and satisfied of record as to Hillsborough County, Florida." Satisfaction of Judgment (Dkt. 48-15).[5] Despite reserving her right vis-à-vis White, Ogden has not attempted to collect any sums directly from White.

### *The Settlement Between the County and the Insurers*

On or about February 17, 2010, State National agreed to pay $65,989.18 to the County to resolve their dispute relating to insurance coverage. Settlement and Mutual Release Agreement (Dkt. 41-4), ¶ 1 (the "Coverage Settlement").[6] The Coverage Settlement expressly provides that consistent "with [State National]'s stated declination of coverage to [White] in connection with the [Ogden Litigation], should the County for any reason reimburse White for any costs, defense, indemnity or otherwise, incurred by White in connection with the [Ogden Litigation], the County shall not seek reimbursement from [State National] for any such payment to White." Coverage Settlement, ¶ 4.

---

[4] The Ogden Settlement expressly provides that by agreeing to the settlement "[Ogden] do[es] not waive any rights or release Kevin White, the co-defendant in the lawsuit." Ogden Settlement, p. 3.

[5] The parties in the Ogden Litigation also filed a "Stipulation of Dismissal With Prejudice as to Defendant, Hillsborough County, Florida." Ogden Litigation, Dkt. 157.

[6] The Coverage Settlement does not reference Star Insurance and the impact of the settlement as to Star Insurance is not otherwise evident from the record.

## Procedural Background

The Insurers commenced this action by filing a two count complaint for declaratory relief seeking declarations that (1) insurance coverage never existed for White under the POELI Endorsement for the claims asserted against him in the Ogden Litigation, and (2) neither Insurer had a duty to defend or reimburse White given that his dense costs never exceed the SIR Retention (Dkt. 1). White filed a counterclaim against the Insurers for breach of contract seeking payment and/or reimbursement of the attorney's fees and costs he incurred in defending the Ogden Litigation (Dkt. 5).[7]

The Insurers move for summary judgment on their claims against White and on White's counterclaim. White moves for summary judgment on his claims against the Insurers and on the Insurers claims for declaratory relief.[8]

## Standard on Summary Judgment

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as

---

[7] White also filed a Third Party Complaint against the County, asserting claims for declaratory relief and breach of contract, seeking payment and/or reimbursement of the attorney's fees and costs he incurred in the Ogden Litigation (Dkt. 6). The County filed counterclaims against White for subrogation, equitable indemnification, and contribution seeking to recover its costs and expenses incurred in defending and settling the Ogden Litigation (Dkt. 17). The Court previously dismissed the County's counterclaim for equitable subrogation with prejudice (Dkt. 29).

[8] White also moves for summary judgment on his claims against the County and the County's claims for subrogation and contribution. This portion of White's motion for summary judgment will be addressed in a separate Order.

7

a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable jury could find for the non-moving party. *Id.*

### Florida Law Relating to the Interpretation of Insurance Policies

The interpretation of an insurance contract is a question of law. *See Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. 4th DCA 2002). The policy must be read as a whole, and every provision must be accorded its full meaning and operative effect. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941 (Fla. 1979) (noting that every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible); *see also Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993).

It is well-settled that insurance contracts are to be construed in accordance with the plain language of the policy, with any ambiguity interpreted liberally in favor of the insured and against the insurer. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000); *see Fayad v. Clarendon Nat'l Ins. Co.*, 899 So.2d 1082, 1086 (Fla. 2005) ("[a]mbiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured"). Policy language is considered ambiguous if the language is susceptible to more than one reasonable interpretation. *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004).

### Duty to Defend under the POELI Endorsement

The Insurers contend that there was no duty to defend White under the SIR Endorsement based on the claims asserted by Ogden. There is no dispute that the SIR Endorsement modifies the POELI Endorsement. Indeed, White acknowledges that the Insurers' duty to reimburse White for his attorney's fees and expenses "derives from the express contractual obligation set forth in the SIR endorsement to pay all combined allocated costs and expenses of investigation, negotiation and settlement in excess of the self-insured retention of $350,000 ... and not because the SIR endorsement contractually imposes a duty to defend on the Insurers, which, as Insurers are correct to assert, it does not." Dkt. 50, pp. 4-5.

The parties' disagree as to whether Ogden's claims against White are covered under the Policies and whether the Insurers have a duty to reimburse White for attorney's fees and expenses.[9] The Insurers argue that the claims against White in the Ogden Litigation are not covered under the

---

[9] White argues that the Insurers waived any right to deny reimbursing him the actual or reasonable expenses connected with his defense of the Ogden Litigation because the Insurers settled with the County despite actual knowledge that the County breached an alleged duty to defend under the SIR Endorsement. It is not clear from the record, however, whether the Coverage Settlement was intended to resolve the coverage issue as to both Insurers and only State National was expressly named in the agreement. As a result, even assuming (without deciding) that White's waiver argument has legal merit, disputed issues of material fact preclude summary judgment.

Policies and, therefore, do not give rise to a duty to reimburse White for expenses incurred in excess of the SIR Retention.[10] Specifically, the Insurers argue that they only "had a duty to reimburse White for costs and expenses he incurred in defending himself against *covered* claims." Dkt. 45, p. 9.[11]

The Insurers' reference to "covered claims" is based on the erroneous premise that the standard applicable in determining whether an insured is entitled to indemnity (*i.e.*, whether there is coverage under a policy) applies when determining whether an insurer has an obligation to reimburse an insured for the cost of defending claims that, absent an SIR Endorsement, would have triggered a duty to defend. Where, as here, an insurer has an obligation to reimburse an insured for defense expenditures in excess of an SIR Retention, the duty to reimburse is measured by the same standard as the duty to defend. *See, e.g.*, *Liberty Mut. Ins. Co. v. Pella Corp.*, Nos. 10-1933, 10-2065, 2011 WL 3611485, at *7 (8th Cir. Aug. 18, 2011) (parameters of duty to defend guide analysis of insurer's duty to reimburse insured based on SIR endorsement); *Omega Flex, Inc. v. Pacific Employers Ins. Co.*, 937 N.E.2d 52, 59-60 (Mass. App. Ct. 2010) (concluding that deductible endorsement did not limit insurer's duty to pay defense costs to actions in which it had a duty to pay damages).

The Insurers cannot dispute that, absent the SIR Endorsement, the POELI Endorsement imposed on the Insurers a duty to defend a suit seeking damages based on a "wrongful act" as

---

[10] In response to White's summary judgment motion, the Insurers contend that the duty to defend was not triggered until after the Ogden litigation concluded, noting: "[t]he question is whether the [Insurers] have a duty to *reimburse* White for fees he incurred defending himself … ." Dkt. 49, p. 4.

[11] The Insurers argue that the Policies provided excess insurance coverage and therefore did not give rise to a contractual duty to defend. The Court agrees that the SIR Endorsement qualifies the coverage afforded by the CGL and POELI Endorsement. *See State Nat'l Ins. Co. v. City of Miami*, No. 09-23273-CIV, 2010 WL 3745005 (S.D. Fla. Sept. 21, 2010). However, the Court rejects the Insurers' argument that they were only obligated to reimburse defense costs in excess of the SIR Retention if the resolution of the underlying claims triggered coverage (*i.e.*, a duty to indemnify). This is not a case where the insurance policy expressly makes the duty to pay defense costs coextensive with the duty to indemnify. *Compare Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1364 (M.D. Fla. 2001).

defined by the endorsement. The SIR Endorsement was designed to create a self-insured amount, which, if exceeded obligates the Insurers to reimburse the insureds for damages and costs *vis-à-vis* the duty to defend. While the SIR Endorsement changed how claims would be defended, there is no indication that the SIR Endorsement was intended to change the general rule that insurers are obligated to furnish a defense or pay an insured's defense costs irrespective of the outcome of the underlying litigation.

"The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 443 (Fla. 2005); *see, e.g.*, *Creative Hospitality Ventures, Inc. v. United States Liability Ins. Co.*, 655 F.Supp.2d 1316, 1325 (S.D. Fla. 2009). A liability insurer's obligation to defend a claim made against its insured must be determined from the allegations in a complaint. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810, 813 (Fla. 1st DCA 1985); *see Irvine v. Prudential Prop. & Cas. Ins. Co.*, 630 So.2d 579, 579-80 (Fla. 3d DCA 1993) ("The duty is determined solely by the allegations against the insured, not by the actual facts, nor the insured's version of the facts."). Thus, the resolution of the duty to reimburse is not dependent on the verdict in favor of Ogden and the Insurers' focus on the outcome of the Ogden Litigation is misplaced.

Ogden asserted claims against White (and the County) for sex discrimination, sexual harassment, and retaliatory discharge under 42 U.S.C. § 1983 and the FCRA. Ogden sought compensatory and punitive damages, including lost wages, benefits, future wages and/or reinstatement, and such other relief as may be appropriate under §1983 and the FCRA. *See* Ogden Complaint, pp. 5-7. In addition, Ogden alleged:

> As a direct and proximate result of [the Defendants' conduct], [she] suffered actual harm in the form of various injuries including, but not limited to, loss of past and future wages and loss of various non-salaried benefits. In addition, as a result of the unlawful employment practices complained of herein, Ogden has suffered the loss of past and future economic benefits, has suffered emotional pain and suffering, inconvenience, mental anguish and loss of the enjoyment of life.

Ogden Complaint, ¶ 27; *see also* Ogden Complaint, ¶¶ 32, 37.

The parties do not dispute that the alleged acts giving rise to Ogden's claims fall within the definition of a "wrongful act" in the POELI Endorsement.[12] Instead, the Insurers argue that the claims against White are expressly excluded from coverage under the POELI Endorsement,[13] including Exclusion 2(E) relating to claims arising out of bodily injury, sickness, disease, death, or mental anguish, and Exclusion 2(J) relating to claims arising from the willful violation of any statute, ordinance or regulation. Unless *all* of the claims against White in the Ogden Complaint fall within these exclusions, the duty to defend (or reimburse) would have been triggered under one or both of the Policies. *See Baron Oil Co.*, 470 So.2d at 813-14.

"When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely within the policy exclusion and are subject to no

---

[12] The POELI Endorsement expressly covers "malfeasance," defined by Black's Law Dictionary as "[a] wrongful or unlawful act; esp. wrongdoing or misconduct by a public official." *Black's Law Dictionary (9th ed. 2009)*, malfeasance. To the extent there is an inconsistency between the definition of a "wrongful act" under the POELI Endorsement (providing coverage for breach of duty, including malfeasance) and the CGL definition of occurrence (defining an "occurrence" as an "accident"), any such conflict must be resolved in favor of coverage. *See, e.g., Auto-Owners Ins. Co.*, 756 So.2d at 34; *see also Steuart Petro. Co. v. Certain Underwriters at Lloyd's London*, 696 So.2d 376, 379 (Fla. 1st DCA 1997) ("in general, to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls").

[13] The Insurers also argue that the claims in the Ogden litigation fall outside the scope of the CGL Coverage A ("Bodily Injury" or "Property Damage") and CGL Coverage B ("Personal Injury" or "Advertising Injury"). In his response, White relies on the POELI Endorsement for coverage. Dkt. 50, p. 15 ("for purposes of defeating the Insurers' motion for summary judgment, [the Court] need not reach the question as to whether the policies afford coverage under Coverages A and B of the Commercial General Liability Forms").

other reasonable interpretation. Exclusionary clauses are generally disfavored." *Hartford Accident and Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (quoting *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1359 (M.D. Fla. 2001)) (internal citations omitted); *see Creative Hospitality Ventures, Inc.*, 655 F.Supp.2d at 1337 (noting that exclusionary clauses are considered contrary to the fundamental protective purposes of insurance and are strictly construed). The burden of demonstrating the applicability of an exclusionary clause falls on the insurer. *See, e.g., Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1309 (11th Cir. 2008) (citing *U.S. Concrete Pipe Co. v. Bould*, 437 So.2d 1061, 1065 (Fla. 1983)).

With respect to Exclusion 2(E), the Insurers argue that in each of Ogden's claims against White, she sought damages for mental anguish and other intangible, non-economic damages. While this may be true, Ogden also sought economic damages, including benefits, future wages and/or reinstatement. The Insurers acknowledge that Ogden sought damages for "past and future lost wages, reinstatement, and interest, costs and attorneys fees." Dkt. 45, p. 11. Moreover, Ogden's claim for retaliation did not "arise out" of a bodily injury or mental anguish, but rather resulted directly from her termination. Thus, all of Ogden's claims do not fall within the POELI Endorsement's exclusion of claims "arising out of bodily injury, sickness, disease, death, or mental anguish."[14]

---

[14] Plaintiffs make the disingenuous argument that no coverage is provided because sexual harassment is not an "accident" and, therefore, not an "occurrence" under the policy. Dkt. 45, p. 12. Under the POELI Endorsement, the policy provides coverage for damages the insured becomes obligated to pay for a "wrongful act." The definition of "Wrongful Act" expands the definition of "occurrence." *Cf. Madrid County Reorganized School Dist. No. 1 v. Continental Cas. Co.*, 904 F.2d 1236, 1240 (8th Cir. 1990) (holding that policy providing coverage for "wrongful acts" unambiguously provided coverage for discrimination claim under section 1983); *Independent School Dist. No. 697 v. St. Paul Fire and Marine Ins. Co.*, 515 N.W.2d 576, 589 (Minn. 1994) (concluding that policy provided coverage for claims of intentional discrimination because "wrongful act" encompasses intentional as well as negligent misconduct).

With respect to Exclusion 2(J), the Insurers argue that because Ogden accused White of willfully violating the FCRA and because her federal claim (although arising from an allegedly willful violation of the Constitution) was brought under 42 U.S.C. § 1983, Ogden's claims fall within the exclusion for claims based on a "willful violation of any statute, ordinance or regulation." The issue on summary judgment turns on whether the conduct alleged in each of Ogden's claims constituted wilful violations of a statute.

While the Ogden Complaint does not expressly allege that White "willfully" violated the FCRA,[15] it appears that Ogden's claims under the FCRA fall within the exclusion for wilful statutory violations.[16] Notwithstanding, it is unnecessary to decide whether the conduct alleged in Counts II and III (the FCRA claims) of the Ogden Complaint fall within the "wilful" violation of a statute exclusion, because the conduct alleged in Count I (sex discrimination) clearly does not.

A §1983 claim is not based on a statutory violation *per se*, but rather amounts to a constitutional tort. *See, e.g., Katka v. Mills*, 422 F.Supp.2d 1304, 1310 (N.D. Ga. 2006) (noting that claims under section 1983 are based on constitutional torts); *see also Guaranty Nat'l Ins. Co. v. Int'l Ins. Co.*, 994 F.2d 1280, 1286 (7th Cir. 1993) (noting that district court concluded that civil rights claims were constitutional and not statutory violations for purposes of "willful violation of a statute"

---

[15] With respect to her § 1983 claim of sex discrimination, Ogden did allege that White's actions were "intentional," "violated clearly established constitutional rights against sex discrimination," and "demonstrated a callous and conscious disregard of Ogden's constitutional rights to Equal Protection." Ogden Complaint, ¶¶ 21, 23-24. However, with respect to Ogden's sexual harassment and her retaliation claims under the FCRA, she did not allege a wilful violation of the statute, either expressly or by analogous language.

[16] Florida cases hold that a "willful" violation of a statute is synonymous with an "intentional" violation. *See Reliance Ins. Co. v. Lazzara Oil Co.*, 601 So.2d 1241 (Fla. 2d DCA 1992); *Acceptance Ins. Co. v. Bates, Dunning, & Associates, Inc.*, 858 So.2d 1068, 1070 (Fla. 3d DCA 2003). In another context, the test of whether an act constitutes a "conscious and intentional violation" of a penal statute is not whether the individual specifically intends to violate a statute but whether he "consciously intends to do the act which is violative of the statute." *Gregory v. McKesson & Roberts*, 54 So.2d 682, 686 (Fla. 1951).

exclusion, but reversing district court decision based on other coverage exclusions); *cf. Brewer v. Village of Old Field,* 311 F.Supp.2d 382, 388 (E.D.N.Y. 2004) (allegations that officers violated claimant's Fourteenth Amendment rights did "not arise from the willful violation of a penal statute or ordinance"). The Insurers' nonetheless essentially contend that the term "statute" should be construed to include "constitution." At best, this argument suggests an ambiguity that must be construed against the Insurers. *See Auto-Owners Ins. Co.,* 756 So.2d at 34 (noting that exclusionary clauses, if ambiguous, are construed even more strictly against the insurer than coverage clauses). Moreover, while courts have held that an intent to harm may be inferred when intentional discrimination is alleged, *see, e.g., Vaughner v. Pulito,* 804 F.2d 873, 877 (5th Cir. 1986), the intent to harm (or to engage in harassing conduct that may be harmful) does not necessarily equate to an intent to violate the Constitution.

If the Insurers intended to limit their duty to defend by excluding claims for discrimination, the Insurers could easily have done so simply by adding discrimination as an express exclusion from the definition of "wrongful act." *See United States Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 884 (Fla. 2007) (if the insurer "intended to preclude coverage based on the cause of action asserted, it was incumbent on [the insurer] to include clear language to accomplish this result"). At the very least, the Insurers have failed to carry their burden in demonstrating that the exclusion for willful statutory violations applies to a claim for an alleged constitutional violation brought under § 1983. *See LeFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997) (noting that burden

of proving an exclusion to coverage is on the insurer) (citing *Hudson Ins. Co. v. Double D. Management Co., Inc.*, 768 F.Supp. 1542 (M.D. Fla. 1991)).[17]

Based on the forgoing, the Court concludes that, subject to the SIR Retention, one or both of the Insurers had a duty to reimburse White for his reasonable legal expenses incurred in connection with the Ogden Litigation. *See Baron Oil Co.*, 470 So.2d at 814 ("any doubt regarding the duty to defend ... must be resolved in favor of ... requiring the insurer to defend"); *Jones*, 908 So.2d at 443; *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1307 (Fla. 1st DCA 1992). In reaching this conclusion, the Court notes that White is entitled to reimbursement because he was an *insured* under the Policies and irrespective of whether he was found liable to Ogden in the underlying litigation.

## Duty to Reimburse under the SIR Endorsement

The Insurers obligation to reimburse White for expenses incurred in defense of the Ogden Litigation did not arise until the $350,000 SIR Retention was satisfied with respect to one or both of the Policies.[18] As discussed below, the current record prevents the Court from determining

---

[17] The fact that Florida law prohibits an insured from being *indemnified* for loss resulting from an intentional act of discrimination, *see, e.g., Ranger Ins. Co. v. BAL Harbour Club, Inc.*, 549 So.2d 1005 (Fla. 1989), does not preclude an insurer from being obligated to *defend* an insured against claims of sexual harassment. *See Clinton v. AETNA Life and Surety Co.*, 594 A.2d 1046, 1049 (Conn. 1991) (recognizing that imposing on an insurer a duty to defend a claim of discrimination does not run counter to Florida public policy); *see also CGU Ins. v. Tyson Associates*, 140 F.Supp.2d 415, 421-22 (E.D. Pa. 2001) (alleged public policy precluding insurance coverage for willful criminal acts or for intentional torts did not apply to duty to defend issue); *Venture v. LMI Ins. Co.*, 78 Cal.Rptr.2d 142, 159-61 (Cal. App. Ct. 1998) (concluding that statute prohibiting indemnification for "willful acts" did not preclude insurer's obligation to provide defense). *But see Coit v. Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 18 Cal.Rptr.2d 692, 705 n.3 (Cal. App. Ct. 1993) (noting that under California law when statute and public policy bar any possibility of indemnity for conduct that is inseparably intentional, there is also no duty to defend).

[18] If or when the SIR Retention was satisfied as to the County, the SIR Retention was also satisfied as to White (assuming that the Ogden Litigation, or events giving rise thereto, constituted a single occurrence). *See Travelers Cas. & Surety Co. v. American Int'l Surplus Lines Ins. Co.*, 465 F.Supp.2d 1005, 1020 (S.D. Cal. 2006).

whether the SIR Retention was satisfied and, if so, the amount White is entitled to recover under one or both of the Policies.

The record reflects that State National agreed to pay $65,989.18 to the County to settle coverage issues relating to the Ogden Litigation. White argues that this demonstrates that the County spent more than the $350,000 necessary to satisfy the SIR Retention. This argument, however, fails to take into account the fact that the record is unclear with respect to which policy or policies were triggered in connection with the Ogden Litigation (*i.e.,* when the "occurrence" or "occurrences" happened) and how the Coverage Settlement was apportioned, if at all, between Star Insurance and State National. As a result, it is unclear whether the SIR Retention was reached under one or both of the Policies. *See, e.g., Beloit Liquidating Trust v. Century Indemnity Co.*, No. 02 C 50037, 2002 WL 31870525, at *3 (N.D. Ill. Dec. 20, 2002). In addition, assuming the SIR Retention was satisfied, the record is unclear as to the amount White is entitled to recover from one or both of the Insurers.

## Conclusion

The undisputed facts demonstrate that, provided the SIR Retention was satisfied, one or both of the Insurers had a duty to reimburse White for the reasonable expenses he incurred in his defense of the Ogden Litigation. The record is unclear, however, as to whether the duty to reimburse was triggered under one or both of the Policies and whether the SIR Retention was satisfied. In order to facilitate the prompt and efficient resolution of these remaining issues, the parties are directed to submit supplemental memoranda addressing which policy or policies were triggered, whether the SIR Retention was satisfied, and the amount, if any, White is entitled to recover under the Policies

given that one or both of the Insurers had a duty to reimburse White for the reasonable expenses he incurred in connection with the Ogden Litigation.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Plaintiffs' Motion for Summary Judgment (Dkt. 45) is **DENIED** as to Count I of the Complaint. The Court defers ruling on the motion with respect to Count II of the Complaint and White's counterclaim.

(2) Kevin White's Motion for Summary Judgment (Dkt. 40) is **GRANTED** as to Count I of the Complaint. The Court defers ruling on the motion with respect to Count II of the Complaint, White's counterclaim, and the claims involving Hillsborough County.

(3) Within **fourteen (14) days** from the date of this Order, the parties are directed to submit supplemental memoranda not exceeding ten (10) pages addressing which policy or policies were triggered, whether the SIR Retention was satisfied, and the amount, if any, White is entitled to recover from one or both of the Insurers under the triggered policy or policies.

**DONE AND ORDERED** in chambers this 18th day of October, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record