UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE NATIONAL INSURANCE
COMPANY and STAR INSURANCE
COMPANY,

    Plaintiffs/Counter-Defendants,

vs.                                               Case No. 8:10-cv-894-T-27TBM

KEVIN WHITE,

    Defendant, Counter-Plaintiff,
    Third Party Plaintiff, and
    Third Party Counter-Defendant,

vs.

HILLSBOROUGH COUNTY, FLORIDA,

    Third Party Defendant and
    Third Party Counter-Plaintiff.
_____/

## ORDER

**BEFORE THE COURT** are the Plaintiffs' Motion for Summary Judgment (Dkt. 45) and Kevin White's Motion for Summary Judgment (Dkt. 40). Based on a review of the supplemental memoranda submitted by the parties (Dkts. 81, 83, 84), the Court concludes that the Plaintiffs' Motion for Summary Judgment (Dkt. 45) is due to be **DENIED** and Kevin White's Motion for Summary Judgment (Dkt. 40) is due to be **GRANTED** as to his counterclaim against the Insurers.[1]

---

[1] This Order addresses the motions for summary judgment as to the claims between Kevin White and the Plaintiffs. Kevin White's motion for summary judgment as to Hillsborough County is addressed in a separate order.

## Introduction

The issue currently before the Court is whether State National Insurance Company ("**State National**") and/or Star Insurance Company ("**Star Insurance**") (collectively, the "**Insurers**") had a duty to defend Kevin White ("**White**") or reimburse him for the reasonable expenses he incurred in defending certain underlying litigation. The Insurers acknowledge in their supplemental memorandum that the only remaining issue before the Court is whether the SIR Retention was satisfied under the State National Policy.[2]

On October 18, 2011, the Court denied the Plaintiffs' Motion for Summary Judgment as to Count I of the Complaint, granted Kevin White's Motion for Summary Judgment as to Count I of the Complaint, and deferred ruling on the motions for summary judgment with respect to Count II of the Complaint and White's counterclaim. *See* Order (Dkt. 69).[3] In so ruling, the Court held that, subject to the SIR Retention, one or both of the Insurers had a duty to reimburse White for his reasonable legal expenses incurred in connection with the Ogden Litigation because Ogden's claim under 42 U.S.C. § 1983, as alleged, fell within the scope of coverage provided by the POELI Endorsement. The Court noted that the record was unclear, however, as to whether the duty to reimburse was triggered under one or both of the Policies and whether the SIR Retention was satisfied. As a result, the Court directed the parties to submit supplemental memoranda addressing which policy or policies were triggered, whether the SIR Retention was satisfied, and the amount,

---

[2] The Insurers concede that only the State National Policy was triggered. This is identical to the County's position and consistent with White's position that, although both Policies were triggered, only State National is liable to White.

[3] Unless otherwise noted, capitalized terms in this Order have the same meaning ascribed to them in the prior Order (Dkt. 69) on the parties' motions for summary judgment. The factual and procedural background set forth in that Order are also incorporated herein by reference.

2

if any, White is entitled to recover from one or both of the Insurers under the triggered policy or policies.

## Undisputed Facts

The record establishes that White incurred $157,730.31 in legal fees and expenses in connection with the Ogden Litigation. *See* Deposition of Kevin White (Dkt. 82), Exhibits 6 & 7. The record also establishes that the County spent a total of $490,989.18 in connection with the Ogden Litigation, consisting of $114,713.35 in legal fees, $98,275.83 for trial costs and related expenses, and $278,000 paid to Ogden to satisfy the $75,000 judgment with the remaining $203,000 allocated to Ogden's attorneys' fees. *See, e.g.*, Full and Complete Waiver and Release of Liability (Dkt. 41-1) (the "**Ogden Settlement**"), p.1; Hillsborough County's Supplemental Memorandum (Dkt. 80), p. 3; Kevin White's Supplemental Memorandum (Dkt. 81), Exhibit 2.[4]

## Standard on Summary Judgment

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light

---

[4] Despite acknowledging that "[f]rom the County's perspective, the $350,000 SIR under the State National Policy ... was satisfied," the County contends that White is not entitled to recover from State National because his defense costs in the Ogden Litigation did not exceed $350,000. *See* Hillsborough County's Supplemental Memorandum (Dkt. 80), p. 4. The Court rejects this contention. If or when the SIR Retention was satisfied as to the County, the SIR Retention was also satisfied as to White. *See Travelers Cas. & Surety Co. v. American Int'l Surplus Lines Ins. Co.*, 465 F.Supp.2d 1005, 1020 (S.D. Cal. 2006).

3

most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable jury could find for the non-moving party. *Id.*

### Florida Law Relating to the Interpretation of Insurance Policies

The interpretation of an insurance contract is a question of law. *See Graber v. Clarendon Nat'l Ins. Co.*, 819 So.2d 840, 842 (Fla. 4th DCA 2002). The policy must be read as a whole, and every provision must be accorded its full meaning and operative effect. *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So.2d 938, 941 (Fla. 1979) (noting that every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible); *see also Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993).

It is well-settled that insurance contracts are to be construed in accordance with the plain language of the policy, with any ambiguity interpreted liberally in favor of the insured and against the insurer. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000); *see Fayad v. Clarendon Nat'l Ins. Co.*, 899 So.2d 1082, 1086 (Fla. 2005) ("[a]mbiguous coverage provisions are

4

construed strictly against the insurer that drafted the policy and liberally in favor of the insured"). Policy language is considered ambiguous if the language is susceptible to more than one reasonable interpretation. *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004).

## Discussion

The Insurers argue that factual matters relating to the proper apportionment (between covered and non-covered claims) of the damages, costs, and expenses incurred by the County in connection with the Ogden Litigation preclude summary judgment on the issue of whether the SIR Retention was satisfied under the State National Policy. Specifically, the Insurers argue that it is only what the County paid in connection with *covered* claims that can be used to exhaust the SIR Retention.

The Insurers argument that the SIR Retention can only be satisfied by expenses incurred and payments made in relation to covered claims is based on the follow provision in the SIR Endorsement:

> In the event that any *combined insured damages* and *insured allocated costs and expenses*,[5] as aforementioned, exceed, per occurrence, the NAMED INSURED'S self-insured retention and *involve the liability of the company*, then, solely as respects each such occurrence, the company will pay ... its otherwise applicable limit of liability ... .

Self-Insured Retention Endorsement (Form SNS 1010) (emphasis added). Thus, a question arises as to how the phrases "combined insured damages" and "insured allocated costs and expenses" should be applied in the SIR Endorsement.

---

[5] "Insured allocated costs and expenses" refers to "costs and expenses of investigation, defense, negotiation and settlement applicable to [insured damages]."

5

The terms "combined insured damages" and "insured allocated costs and expenses" are not defined in the SIR Endorsement or the Policies.[6] The Insurers assume, without comment, that this language should be interpreted to refer only to "covered" or "insured" damages together with costs and expenses directly attributable to covered claims. Not only is this interpretation inconsistent with the Court's earlier ruling establishing that the Insurers had a duty to reimburse White once the SIR Retention was satisfied, it is also only one of several reasonable interpretations.[7] For example, the language at issue could just as easily be interpreted to refer to damages, costs and expenses incurred by a "named insured" as opposed to those incurred by the insurer, additional insureds, and/or third parties. Indeed, the latter interpretation appears more consistent with the general purpose of the SIR Endorsement and the Policies as a whole (*i.e.*, to limit the potential exposure of the County and its employees to $350,000 per occurrence). *See Excelsior Ins. Co.*, 369 So.2d at 941 (noting that every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible).

In support of their argument that summary judgment is inappropriate because a trial is required to allow an apportionment of payments made with respect to covered and uncovered claims, the Insurers cite *In re Feature Realty Litig.*, 634 F.Supp.2d 1163, 1167 (E.D. Wash. 2007). Notably, the policy at issue in *Feature Realty* expressly provided that "[t]he 'self insured retention' is not exhausted or diminished by payment of any loss, claim or 'suit' that is not covered by this policy."

---

[6] The SIR Endorsement does exclude certain expenses incurred by an insured (*i.e.*, claims management services, wages and salaries of insured's employees, and operating expenses of employees). Tellingly, however, there is no provision expressly excluding expenses associated with non-covered claims from either "insured damages" or "insured allocated costs and expenses."

[7] White concedes that, at a minimum, the term "combined insured damages" is ambiguous as to whether it means "combined insured damages for which coverage exists" or "combined damages incurred by either the named insured or any other insured." White argues, however, that the undisputed facts reveal that the SIR Retention was satisfied because "insured allocated costs and expenses" included the County's attorneys fees, related costs, and monies paid to settle Ogden's claim for attorney's fees.

*Id.* at 1170.[8] In contrast, the SIR Endorsement contains no similarly unambiguous language. Thus, while *Feature Realty* arguably supports the Insurers' position that an apportionment between covered and uncovered claims **may** be appropriate to determine whether an **unambiguous** SIR has been satisfied, the language of the policy at issue in *Feature Realty* actually supports the conclusion that the SIR Endorsement is, at the very least, ambiguous as to what damages, costs, and expenses can be considered in determining whether the SIR Retention was satisfied.

At best, the SIR Endorsement is ambiguous as to whether the SIR Retention can be satisfied only by the payment of costs and expenses incurred in connection with covered claims and, therefore, must be liberally construed in favor of the insured. *See Fayad*, 899 So.2d at 1086 ("[a]mbiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured"); *Flores v. Allstate Ins. Co.*, 819 So.2d 740, 744 (Fla. 2002) ("[a]s a fundamental proposition, where the language in an insurance policy is subject to differing interpretations, the policy language should be construed liberally in favor of the insured and strictly against the insurer") (internal quotations and citations omitted); *Bethel v. Security Nat'l Ins. Co.*, 949 So.2d 219, 222 (Fla. 3d DCA 2006) ("[w]hen an insurer fails to define a term in a policy, the insurer cannot take the position that there should be a narrow, restrictive interpretation of the coverage provided"). Construing the ambiguous language of the SIR Endorsement in favor of White and against the Insurers, the Court concludes that the $490,989.18 in costs and expenses undisputably incurred by the County in connection with the Ogden Litigation was sufficient to satisfy the SIR

---

[8] Moreover, given that the Insurers themselves acknowledged that the covered claims (*i.e.*, claims under § 1983) and non-covered claims (*i.e.*, claims under the FCRA) were subject to the same liability standard, *see* Insurers' Supplemental Memorandum (Dkt. 84), p. 3, it is questionable whether an apportionment of fees and costs incurred in connection with covered versus non-covered claims is even possible, let alone required by Florida law. *See also In re Feature Realty Litig.*, 634 F.Supp.2d at 1174 (noting that absent evidence that an element of damages is solely attributable to a non-covered cause of action and/or that defense costs can be separated by distinct legal theories, apportionment amongst causes of action settled is not appropriate – or even possible).

Retention. *See also Taco Bell Corp. v. Continental Cas. Co.*, No. 01 C 0428, 2003 WL 1475035, at *14 (N.D. Ill. Mar. 17, 2003) (holding SIR endorsement was subject to exhaustion by any commercially reasonable "defense costs" without regard to whether those costs were traceable to potentially covered claims).[9]

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Plaintiffs' Motion for Summary Judgment (Dkt. 45) is **DENIED**.

(2) Kevin White's Motion for Summary Judgment (Dkt. 40) is **GRANTED** as to the Complaint and his Counterclaim against State National Insurance Company.

(3) The Clerk is directed to enter judgment in favor of Kevin White and against State National Insurance Company in the amount of **$157,730.31**. The Court reserves jurisdiction to amend the judgment to include an appropriate amount, if any, of prejudgment interest.[10]

**DONE AND ORDERED** in chambers this 18th day of November, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[9] This is true even if a portion of the $75,000 Ogden Judgment was excluded from "insured damages" under the SIR Endorsement. Moreover, because Ogden ultimately prevailed on a covered claim (her § 1983 claim), this is not a situation where the Insurers can argue that there was no duty to defend in the first instance. *cf. Colony Ins. Co. v. G & E Tires & Service, Inc.*, 777 So.2d 1034 (Fla. 1st DCA 2000) (holding insurer could recover costs spent defending insured for non-covered claims when trial court determined that none of the claims at issue were covered by the policy and, thus, insurer never had a duty to defend in the first instance). Similarly, the Insurers cannot reasonably dispute that Ogden's entitlement to fees under § 1988 stemmed directly from her covered equal protection claim under § 1983.

[10] The Court rejects the Intervenor's contention that White is entitled to prejudgment interest running from the date of each unreimbursed invoice. State National's obligation to reimburse White (*i.e.*, the date of loss) did not arise until such time as the SIR Retention was satisfied.