**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**STATE NATIONAL INSURANCE**
**COMPANY and STAR INSURANCE**
**COMPANY,**

       **Plaintiffs/Counterdefendants,**

**v.**                                **Case No. 8:10-cv-894-T-27TBM**

**KEVIN WHITE,**

       **Defendant/Counterplaintiff/**
       **Third Party Plaintiff.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on referral by the Honorable James D. Whittemore for a Report and Recommendation on **Defendant's, Kevin White, Motion for Attorneys' Fees and Costs** (Doc. 90), Plaintiffs' response in opposition (Doc. 120), and Defendant's reply (Doc. 129).[1]  For the reasons that follow, I conclude that Kevin White is entitled to an award of attorneys' fees against Plaintiffs and recommend that Defendant's Motion be **granted in part**.

For work performed in the trial court, White seeks a total of $827,135 in attorneys' fees which represents a lodestar amount of $330,854, enhanced by a 2.5 contingency risk

_____

[1]Additionally, the parties filed affidavits and other documentary evidence in support. *See* (Docs. 90-1 through 90-15, 120-1 through 120-8, 125-1).

multiplier plus interest from the date of the Judgment.[2]  (Doc. 90).  In short, White contends that having prevailed on his counterclaim against the Plaintiffs, he is entitled to fees under Florida law and that an enhancement of the lodestar calculation by counsel is reasonable given the novelty of the issues, the complexity of the case, and the need for the specialized skills of these counsel.  He urges such is justified because counsel undertook to represent an unpopular and fallen politician in an undesirable cause; the case was one with only limited prospects of success; counsel was precluded from taking on other work over an extended period of time; and the resultant long delay in payment.  His request is supported by contemporaneous time records for attorneys Michael V. Laurato, Howard Levine, Jeffery Constantinos and paralegal Jessica Velez.  (Docs. 90-1 through 90-15).  Mr. Laurato itemizes 442 hours of work for which he seeks an hourly rate of $450.  Mr. Levine itemizes 284.8 hours of work for which he also seeks an hourly rate of $450.  Mr. Constantinos itemizes 20.1 hours of work for which he seeks an hourly rate of $150.[3]  Ms. Velez itemizes 8.2 hours of work and seeks an hourly rate of $95.  In further support, White proffers his own affidavit, his fee contract and engagement letters, affidavits from Mssrs. Laurato, Constantinos, and Levine together with curriculum vitae, and fee orders in other litigation.  *See* (Docs. 90-1 through 90-15).  In additional support

---

[2]The Motion also references a Bill of Costs seeking costs in the amount of $1,525.82. (Doc. 89).  This amount has been taxed by the Clerk and included in the Judgment.  (Doc. 96).

[3]Both sides appear to mishandle this attorney's hours.  White's expert awards Constantinos $6,030 based on 20.1 hours at $150 per hour.  (Doc. 107-1 at 15).  Obviously his math is in error, although the ultimate lodestar calculation by White appears to reflect the correct calculation for all of Constantinos's work.  The Insurers' lodestar for Constantinos awards him $1,230 based on only 8.2 hours work.  (Doc. 120-1 at 55).  This appears a typo of sorts since Mr. Preston notes that he has assumed the reasonableness of this attorney's hours. (Doc. 120-1 at 28 n. 10).

of the Motion, White offers the opinion of his fee expert, John J. Thurber, Esquire.  (Doc. 107-1).

Plaintiffs, State National Insurance Company and Star Insurance Company ("Plaintiffs" or "the Insurers"), respond initially that the motion for fees in excess of $800,000 for a case which involved only $150,000 in disputed insurance coverage is manifestly unjust in contemplation of Florida law.  Even without the multiplier, the fees sought under the lodestar are twice the amount of the Judgment and likewise violate the manifest judgment standard in Florida.  By their analysis of the lodestar, White's fee application itemizes excessive hours and reflects a lack of billing judgment.  Moreover, the hourly rates sought by Mssrs. Laurato and Levine are unreasonable.  They further argue that no enhancement of the lodestar is appropriate in the circumstances of this case and upon consideration of the factors applicable to such.  In support, the Insurers offer the affidavit of their fee expert, Brett Preston, Esquire, deposition transcripts of Mssrs. Thurber and Laurato, and an affidavit from one of their counsel, Michael Buckley, Esquire.  *See* (Doc. 120-1 through 120-8).

A.

In brief summary of these proceedings, this declaratory judgment action was initiated by the Insurers in April 2010 seeking a judicial declaration that they did not have the duty to reimburse Defendant, Kevin White ("Defendant" or "White"), for legal fees incurred in defense of the lawsuit styled *Alyssa Ogden v. Hillsborough County, Florida, and Kevin White*, Middle District of Florida Case No. 8:08-cv-1187-T-26TBM (the "Ogden litigation").[4]  At

---

[4]The *Ogden* litigation involved allegations against Defendant and Hillsborough County for sexual discrimination under § 1983, sexual harassment, and retaliation.  After a five-day

3

pertinent times, Plaintiffs insured Hillsborough County, its employees and public officials under separate Commercial General Liability Insurance policies.  In addition, at pertinent times, White was a Hillsborough County commissioner.  After conclusion of the Ogden litigation, White sought reimbursement for his legal expenses.  By their Complaint for Declaratory Decree, the Insurers first alleged that coverage for White's claim for reimbursement was excluded by the Public Officials Employee Liability Insurance ("POELI") Endorsement in each policy.[5]  Plaintiffs next alleged that by reason of the Self-Insured Retention ("SIR") Endorsements in each policy,[6] neither had a duty to defend nor reimburse White for his legal expenses.  (Doc. 1).  White answered the Complaint and counterclaimed against the Insurers for breach of contract.  (Doc. 5).

White next filed a Third-Party Complaint against Hillsborough County, the named insured under the policies.  In short, White sought declaratory relief related to the SIR endorsements and asserted a breach of contract action for the cost and legal expenses of his defense in the Ogden litigation.  (Doc. 6).  The County answered and counterclaimed against White for subrogation, equitable indemnification, and contribution.  (Doc. 17).  Thereafter,

---

trial, the jury rendered a $70,000 verdict in favor of Ogden and against Hillsborough County and Kevin White.  Judgment was entered in accordance with the jury's verdict on August 24, 2009, which was paid in full by Hillsborough County in October 2009.

[5]Under the POELI endorsement, coverage was excluded for claims arising out of mental anguish, among other harms, and claims arising from the willful violation of any statute.

[6]Under the SIR endorsements, the policies provided coverage for defense and/or indemnity only on covered claims in excess of the $350,000 self-insured retention amount. Plaintiffs alleged that since White's claim for reimbursement did not exceed the self-insured retention amount, his claim for reimbursement failed.

4

the law firm of Wenzel, Fenton & Cabassa, P.A., White's counsel from the *Ogden* litigation, intervened in order to protect its interest in its unpaid fees.  (Docs. 30, 39).

In June 2011, White filed his motion for summary judgment against the Insurers and Hillsborough County.  (Doc. 40).   Plaintiffs, in turn, filed a joint motion for summary judgment asserting that they had no duty to defend White, nor provide him coverage with respect to the Ogden litigation.  (Doc. 45).  In an initial ruling on October 19, 2010, the Court granted White's motion for summary judgment as to Count I of the Complaint (related to the POELI endorsements), but deferred ruling as to Count II of the Complaint and White's counterclaim.[7]  (Doc. 69).  On November 18, 2011, the Court denied Plaintiffs' motion, granted White's motion as to their Complaint and his counterclaim as against State National Insurance Company ("State National").[8]  (Doc. 86).  On the same date, the Court denied White's motion for summary judgment as to his claims against the County and granted White's motion as to the County's counterclaims for contribution and subrogation.  (Doc. 87).  Judgment was entered in White's favor and against State National on November 21, 2011, in the amount of $157,730.31.  (Doc. 88).  Judgment was entered on January 13, 2012 in White's favor as against Hillsborough County on the County's counterclaims for subrogation and contribution.  (Docs. 105, 106).  State National Insurance Company appealed the adverse

---

[7]The Court held that subject to the SIR endorsements, one or both of the Insurers had a duty to reimburse White for his reasonable legal expenses incurred in the Ogden litigation because Ogden's claim was a covered claim under the POELI endorsement.  Additional briefing was ordered.

[8]The Order reflects that only State National would be liable in the circumstances.

Judgment to the Court of Appeals for the Eleventh Circuit.  The Judgment was affirmed on

July 12, 2012.  (Doc. 131).

B.

The starting point in determining reasonable attorney fees is the lodestar, which is

calculated by multiplying the hours reasonably expended by a reasonable hourly rate.  *Hensley*

*v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth. of Montgomery*, 836 F.2d

1292 (11th Cir. 1988).  "[A] reasonable hourly rate is the prevailing market rate in the relevant

legal community for similar services by lawyers of reasonably comparable skills, experience,

and reputation."  *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting

*Norman*, 836 F.2d at 1299).  In determining the reasonableness of hours expended, it is

appropriate for the court to exclude excessive, redundant, and unnecessary hours; hours which

are inadequately documented; and hours which would be unreasonable for an attorney to bill

the client or opposing counsel in the exercise of good billing judgment.  The lodestar, as

calculated under *Hensley*, presumptively includes consideration of the so-called *Johnson*

factors.  *See Norman*, 836 F.2d at 1299.  In *Johnson v. Georgia Highway Express, Inc*., 488

F.2d 714 (5th Cir. 1974), the court set out twelve factors to be considered in determining the

reasonableness of fees: (1) the time and labor required; (2) the novelty and difficulty of the

questions involved; (3) the skill required to perform the legal services properly; (4) the

preclusion of other employment due to acceptance of the case; (5) the customary fee; (6)

whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other

circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and

6

length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at

717-19.  The manner in which the *Johnson* factors influence an award of fees must be

elucidated by the court.  *See In re Celotex Corp.*, 227 F.3d 1336, 1341 (11th Cir. 2000);

*NAACP v. City of Evergreen, Ala.*, 812 F.2d 1332, 1336 (11th Cir. 1987) (quoting *King v.*

*McCord*, 621 F.2d 205, 206 (5th Cir. 1980)).

C.

Initially, the Insurers concede Plaintiff's entitlement to fees.[9]  *See* (Doc. 120 at 4).

As for the lodestar, I have carefully reviewed each billing statement and all the supporting

material.  Upon such review, I find that some adjustment is necessary both to the hourly rates

requested and to the hours billed.

As noted above, "[a] reasonable hourly rate is the prevailing market rate in the

relevant legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation."  *Norman*, 836 F.2d at 1299.  White's expert, John Thurber,

Esquire, avers that based on his nearly thirty years experience, the range of fees customarily

---

[9]Fla. Stat. § 627.428 governs the issue of entitlement to attorneys' fees when an
insured prevails against an insurer.  In pertinent part, the statute reads:

> Upon the rendition of a judgment or decree by any of the courts
> of this state against an insurer and in favor of any named insured
> or omnibus insured or the named beneficiary under a policy or
> contract executed by the insurer, the trial court, or, in the event
> of an appeal in which the insured or beneficiary prevails, the
> appellate court shall adjudge or decree against the insurer and in
> favor of the insured or beneficiary a reasonable sum as fees or
> compensation for the insured's or beneficiary's attorney
> prosecuting the suit in which the recovery is had.

Fla. Stat. § 627.428(1).  There is no dispute that White is entitled to fees under this provision.

charged for such first party insurance claims ranges from $250 to $600 per hour.  Mr. Thurber

maintains that given the experience, reputation and skills of Mssrs. Laurato and Levine and the

specialized skills and expertise required in this area of the law, in federal court, with cross-

claims and third-party claims, and given the work and time limitations imposed by this case,

an award at the upper end of that range is appropriate for these attorneys.  Thus, he concludes

that the hourly rate of $450 requested for both Laurato and Levine is reasonable and

appropriate.  In Mr. Thurber's view, the hourly rate of $150 for Mr. Constantinos, a junior

associate, and $95 for Ms. Velez's paralegal work are also reasonable.

The Insurers rely chiefly on a lengthy and detailed affidavit from Brett Preston,

Esquire, in asserting that Mr. Laurato is an average, competent attorney with an exceptional

amount of trial experience.  By Mr. Preston's assessment, Mr. Levine has less relevant

experience than Mr. Laurato and in this case, he served more in a support role than as lead

counsel.  In sum, Mr. Preston asserts Mssrs. Laurato and Levine are competent but average

attorneys who deserve to be paid in the mid-range of fees for such work in this market.[10]  In

Mr. Preston's opinion, Mr. Laurato should be awarded an hourly rate in the range of $225 to

$275 and Mr. Levine an hourly rate in the range of $225 to $265.  He does not disagree with

an award of $150 per hour to Mr. Constantinos and $95 per hour for Ms. Velez's paralegal

work.

---

[10]Preston's research suggests hourly rates billed for such or similar work range from below $200 to as high as $600.  Actual awards for such work varies but suggest highly experienced attorneys have received awards between $300 and $400 per hour.  In his view, while both Laurato and Levine are experienced trial attorneys, they are not among the top-tier attorneys in this market by reputation, skill or experience, and cannot command the hourly rates obtained by top-tier attorneys.

By my consideration, this was moderately complex first party insurance litigation, requiring above average expertise in the prosecution of such disputes and in contract interpretation, as well as practice in federal court.  Counsel Laurato and Levine, who enjoy reputations as competent plaintiff's counsel, unafraid of trying cases, obtained outstanding results for Mr. White *viz a viz* the Insurers.  Their representation required their acceptance of a discredited client and a relatively undesirable cause of action given the highly public outcome of the underlying suit against White.  The work was undertaken in April 2010 on contingency without any assurance of payment and on claims, the outcome of which was uncertain. White's claims and legal positions were thoroughly opposed by competent counsel.  While the case resolved short of trial and most of counsels' actual work was performed outside of court, White's counsel was challenged on nearly every point thus necessitating their considerable efforts.  Expert counsels' review of fee awards in this market and opinions on the same reveal a range of fees, but by my experience, better counsel achieving good results for their clients command between $300 and $400 per hour in court-awarded fees.  Upon consideration of these factors, I find the following hourly rates reasonable and appropriate in all the circumstances.  As for Mr. Laurato, $350; as for Mr. Levine, $325;[11] as for Mr. Constantinos, $150; and as for the paralegal, Ms. Velez, $95.

---

[11] Also significant to my consideration of these hourly rates is the nature of the work actually performed in this case.  Nearly all the work was out-of-court work not calling into play any special talents of Plaintiff's counsel in this regard.  I also agree with the assessment that Mr. Laurato served as lead counsel and that Mr. Levine occupied what appears to be a "second chair" position in this litigation.

As for the hours billed, White urges that given the novelty and difficulty of the issues in this case, the amount involved, and the results obtained, an award for the full amount of hours expended is reasonable.  White cites to *Hensley,* where the U.S. Supreme Court stated,

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Id.*, 461 U.S. at 435.  Again, White's argument is supported by the affidavit of Mr. Thurber who offers his opinion that only a minimum number of hours related solely to the pursuit of the third-party action against Hillsborough County should be deducted.[12]  Mr. Thurber, as well as Mssrs. Laurato and Levine, urge again that the case was a novel and complex case of policy interpretation involving a question of first impression and the results obtained were a total victory for White.  (Doc. 107-1).

The Insurers respond that significant reductions are appropriate because the billings are excessive, especially in relation to the motions for summary judgment and records review; reflect a lack of good billing judgment; relate to non-recoverable hours on a variety of matters and work unrelated to the coverage issues, such as White's litigation with the County. Moreover, they argue that because some of the work is poorly documented and fails to reveal whether it was related to the coverage issues, many entries should be rejected outright or reduced significantly.  Plaintiff's response is again supported by Mr. Preston's affidavit.  By

---

[12]Mr. Thurber finds it appropriate to reduce Mr. Levine's hours by 16.8 hours and Mr. Laurato's by 3.5 hours.

his detailed review, Mr. Laurato's hours should be reduced by either 164.1 hours or 229.4 hours and Mr. Levine's hours should be reduced by either 55.5 hours or 66.1 hours.[13]  *See* (Doc. 120-1).  By their argument, the issues involved in the coverage dispute were not novel, only moderately complex, and required only a fair amount of legal skill to handle.  Moreover, in actuality, there was little litigation involved, the facts were relatively undisputed, and the legal principles were already well-established.

         As noted above, it is appropriate for the Court to exclude excessive, redundant, and unnecessary hours; hours which are inadequately documented; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment.  After careful review of the billing statements, I find significant adjustments are in order.  Thus, I generally agree with Mr. Preston's assessment that hours spent by Mr. Laurato in relation to a potential bad faith claim; work in connection with the fee litigation which is disallowed by Florida law; administrative or clerical work performed by counsel; paralegal work performed by counsel; work solely related to the third-party action; and work done with the media not shown to have benefitted the case, are not appropriately billed to the Insurers.

---

[13]Mr. Preston makes reductions for work related to a potential bad faith claim; work in connection with the fee litigation; administrative work performed by counsel; work done with the media; hours billed for reading emails (billing judgment); hours billed for work done in connection with the litigation against the County, both specified and unspecified; trial preparation for claims against the County; excessive billing for multiple reviews of the Ogden litigation file; and excessive billing in relation to the summary judgment litigation.  While he finds it appropriate to reduce Laurato and Levine's fees by the higher number of hours, giving them the benefit of the doubt that some billable work was actually performed in areas he disputes, he proposes a lower reduction as well.

I also agree that some adjustment for hours billed for reading emails; reviewing the Ogden litigation record; working on the motions for summary judgment; and preparing for trial is appropriate, although not to the degree urged by the Insurers. On behalf of White, Mr. Thurber recommends only a slight reduction of hours for work which unequivocally related to the County litigation, that is, 3.5 hours from Mr. Laurato and 16.8 hours from Mr. Levine. By Mr. Preston's review on behalf of the Insurers, Mr. Laurato's billings for 48.1 hours review of emails reflects inappropriate billing judgment and should be reduced by 50%. Hours expressly related to the County litigation, that is, 7.2 hours of Mr. Laurato's billings and 30.3 hours of Mr. Levine's billings, should also be stricken. Unspecified hours billed by these attorneys for White's summary judgment motion which also related to the County litigation should be stricken as well.[14] Thus, by Mr. Preston's calculation, 40.2 hours billed by Mr. Laurato and 21.2 hours billed by Mr. Levine should be stricken; or if not stricken, reduced by at least 50%. Similarly, Mr. Laurato's 91 hours of unspecified trial preparation, a portion of which related to the County litigation, should be stricken outright or reduced by at least 50%. Finally, Preston finds the billings for multiple reviews of the Ogden litigation also excessive. He recommends reducing Mr. Laurato's billings for such work by 18.4 hours and Mr. Levine's billings by 10.6 hours.

All totaled, the Insurers seek to reduce Mr. Laurato's 442 hours to either 277.9 hours (63% of the hours billed) or to 212.6 hours (48% of the hours billed).[15] As for Mr. Levine's

---

[14]The Court required a single motion for summary judgment addressing the claim against the Insurers and the County.

[15]Mr. Preston's affidavit contained slight differences in the reduction of Mr. Laurato's hours. *Compare* (Doc. 120-1 at 6) *with* (Doc. 120-1 at 28, 55).

284.8 hours, they seek a reduction to either 229.3 hours (80% of the hours billed) or to 218.7

hours (76% of the hours billed).  Additionally, Mr. Preston expresses the view that the total

hours expended by White's counsel related to the summary judgment motion, that is, 227.6

hours, to prepare three briefs is excessive and reflects significant inefficiencies.

My review of the billing records supports the conclusion that there was some billing

for items unrelated to the dispute with the Insurers; some excessive billing in relation to the

review of the Ogden litigation and the cross-motions for summary judgment; and some

duplication in the efforts of Laurato and Levine, which calls for an adjustment.  I think it is the

correct conclusion that in the exercise of good billing judgment an adjustment well-beyond

that conceded by White is in order.  That said, the Insurers appear to have disputed White's

claims from the outset on nearly every point, thus prompting and necessitating the

considerable work by his counsel.[16]  Further, I find that factual and legal issues related to the

SIR endorsements permeated both the dispute with the Insurers and the dispute with the

County, and that the work related thereto was so intertwined that the hours billed by White's

counsel cannot and should not be stricken or reduced to the degree propose by the Insurers.

Thus, after considerable review in light of the applicable standard, I conclude that the total

---

[16]The following from Justice Overton of the Florida Supreme Court is worth repeating here.

> It appears that [the insurer] decided 'to go to the mat' over the bill for thermographic studies . . . . Having chosen to stand and fight over this charge, [the insurer], of course made a business judgment for which it should have known a day of reckoning would come should it lose in the end . . . . And, although [insurers] are not required to yield an inch or pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*State Farm Fire & Cas. Co. v. Palma*, 555 So. 2d 836, 837 (Fla. 1990).

hours billed by Mr. Laurato should be reduced by 25% or 110.5 hours.  Mr. Levine's total hours should be reduced by 20% or 56.96 hours.[17]

By my calculation, the resulting lodestar is totaled as follows: 331.5 hours x $350 per hour, or $116,025 for Mr. Laurato; 227.84 hours x $325 per hour, or $74,048 for Mr. Levine; 20.1 hours x $150 per hour, or $3,015 for Mr. Constantinos; and 8.2 hours x $95 per hour, or $779 for Ms. Velez, for a total amount of $193,867.

### D.

White seeks a 2.5 contingency fee risk multiplier under Florida law.  Under Florida law, "'[w]hen the prevailing party's counsel is employed on a contingency fee basis, the trial court *must consider* a contingency risk factor when awarding a statutorily-directed reasonable attorney fee.'" *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 831 (Fla. 1990) (quoting *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151 (Fla. 1985)).  "However, its application is discretionary."  *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1272 (M.D. Fla. 2010) (citing *Quanstrom*, 555 So. 2d at 835).  Moreover, "there is a 'strong' presumption that the lodestar reflects a reasonable statutory fee, and enhancements may be awarded only in 'rare' and 'exceptional' circumstances."  *Id.* (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. ___, 130 S.Ct. 1662, 1672-73 (2010)).

In determining whether a multiplier is necessary in a contract claim, the court must consider:

---

[17]The minimal billings by attorney Constantinos and the paralegal Velez, as well as the hourly rates billed are not disputed; I find the hourly rates and hours billed reasonable in this market for such work.

> (1) [W]hether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.

*Quanstrom*, 555 So. 2d at 834.   If a multiplier is appropriate, a court may apply a multiple of 1 to 1.5 if success was more than likely at the onset, 1.5 to 2.0 if the likelihood of success was approximately even, and 2.0 to 2.5 if success was unlikely.  *Id.*  Any award of a multiplier must be consistent with the purpose of the fee-authorizing statute, in this case Fla. Stat. § 627.428.  The purpose of § 627.428 is "to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." *Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992).

      White argues that each of the pertinent factors favors the award of a contingent fee risk multiplier.  Thus, he urges that the award of a risk multiplier is necessary to obtain competent counsel for this type of dispute in this District.  By his account, counsel willing to undertake such battles with insurers are few in number.  White, like most insureds in these circumstances, was unable to pay for counsel on an hourly basis beyond a small amount. Given the risk of non-payment and the expense involved in such cases, small firms such as these need a risk multiplier to justify the undertaking and to assure a claimant competent representation.  As for the second consideration, there was no way in this case for counsel to mitigate the risk of non-payment.  Further, because they undertook to represent White, they were deprived of other paying work because of the obligations inherent in this case.  Finally,

15

the contract between White and counsel was an alternative contingency fee agreement which allowed for a fee only in the event that White was successful.  The amount involved, over $150,000, was not insignificant and the result obtained was a "superlative result."  Irrespective of these considerations, White urges an enhancement is in order based on the delay in receiving payment.

In response, the Insurers urge the Court to exercise its discretion and deny a multiplier.  Citing *Ottaviano*, 717 F. Supp. 2d 1259, they urge both that there is a strong presumption that the lodestar reflects a reasonable fee and that the factors that account for the lodestar cannot be the basis for enhancing the lodestar.  Again, relying upon Mr. Preston's affidavit, they urge that there are plenty of high-quality lawyers in this market who are willing to litigate this type of insurance dispute on contingency, regardless of a risk multiplier or even in the absence of such potential enhancement.  As for the second factor, the fee statute itself, Fla. Stat. § 627.428, provides ample incentive for attorneys to take this type of case even without a multiplier.  Further, the statute itself permits counsel to mitigate the risk that their fee will not be paid and counsel here had the opportunity to mitigate their risk by assigning White's claim to Gale Porter, Esquire.  As for the third factor, the Insurers argue that the type of fee agreement, the amount involved, and the results obtained are already accounted for in the lodestar.  Finally, the purpose of § 627.428 - to discourage insurers from contesting valid claims and to reimburse successful insureds for their fees in these circumstances - is well accomplished without the award of an enhancement.

Considering the first factor, White attests to the difficulty he had in obtaining counsel to pursue his case.  (Doc. 90-15).  By his account, at least five firms declined to represent him

because of the nature of the case, the unlikelihood of success, and because he was viewed as "toxic" and "broke." Even if such is true, and I have no reason to doubt it, in my experience both as an attorney and as a magistrate judge, competent representation in such insurance disputes does not hinge upon the possibility of a contingency risk multiplier. In my view and experience, the fee statute itself offers adequate incentive to assure that competent counsel are available to undertake this type of dispute under a contingent fee agreement, regardless of the risk multiplier. This factor tends to militate against an enhancement. As for the second factor, apart from the potential mitigating effects of the fee statute, counsel had no other means of mitigating against the risk of nonpayment. White's counsel in the underlying litigation had gone unpaid and White was without any means to pay for competent counsel on his own. As for the third factor, counsel received excellent results for White by obtaining a judgment for the full amount involved in the dispute with these Insurers. Thus, the last two factors would appear to justify some enhancement of the lodestar. Yet, I conclude that this was not the rare and exceptional case for which such should be granted.

By my consideration, these grounds for enhancement were part of my calculation of the lodestar, which presumptively, is the reasonable fee authorized in these circumstances. And, while I commend counsel for accepting this client in these circumstances, and for their competent and effective handling of this litigation, they fail to demonstrate from other circumstances that the case is one so exceptional that a risk multiplier is necessary or appropriate. In my view, the lengthy delay in payment can be mitigated somewhat by the award of prejudgment interest on the fee award from the date of the Judgment.

17

E.

For the foregoing reasons, I recommend that Defendant's, Kevin White, Motion for

Attorneys' Fees and Costs (Doc. 90) be **granted** and White awarded <u>$193,867</u> as set forth

herein.  The award should be directed against both Insurers and include prejudgment interest at

the usual rate for federal court judgments from the date of the Judgment, November 21, 2011.

*See Quality Engineered Installation, Inc. v. Higley S., Inc.*, 670 So. 2d 929, 931-32 (Fla.

1996).


Respectfully submitted on this
26th day of October 2012.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a

district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.


Copies to:
United States District Judge
Counsel of Record